**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PAUL NEWKIRK (B72025), )<br>)<br>          Petitioner, )<br>)<br>     v.     )<br>)<br>KEITH ANGLIN, Warden, )<br>Danville Correctional Center,[1] )<br>)<br>          Respondent. ) | Case No. 13 C 9114 |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On December 20, 2013, Petitioner Paul Newkirk, by counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d). On April 2, 2014, Respondent filed a motion to dismiss pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts arguing that Newkirk's present claims are not cognizable on federal habeas review. For the following reasons, the Court grants Respondent's motion to dismiss, denies Newkirk's petition for a writ of habeas corpus, and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

### BACKGROUND

Newkirk does not present clear and convincing evidence challenging the statement of facts in the last state court decision addressing his arguments on the merits, and thus the Court presumes those facts are correct for purposes of its habeas review. *See* 28 U.S.C. § 2254(e)(1); *Coleman v. Lemke,* 739 F.3d 342, 351 (7th Cir. 2014). The Court therefore adopts the

---

[1] The Court substitutes Dan Reardon, the current Warden at the Danville Correctional Center, as the Respondent. *See* Fed.R.Civ.P. 25(d).

underlying facts as set forth by the Illinois Appellate Court in *People v. Newkirk,* No. 2-11-1226, 2012 WL 6969663 (2d Dist. Dec. 3, 2012) (unpublished).

## BACKGROUND

Newkirk's mother had adopted Rashon and Jeremiah Flemings and, when she died, Newkirk became their custodian. At Newkirk's trial, Rashon and Jeremiah, who were nine and ten years old at that time, testified that he had repeatedly sexually abused them. Following the 1995 trial in the Circuit Court of Lake County, Illinois, a jury found Newkirk guilty of six counts of aggravated criminal sexual assault, 720 ILCS 5/12–14(b)(1), and two counts of aggravated criminal sexual abuse, 720 ILCS 5/12–16(c)(1)(i). The trial court sentenced Newkirk to forty-two years of imprisonment.

On direct appeal, Newkirk argued that (1) the trial court failed to follow the proper procedures during his pretrial fitness hearing; (2) the trial court erred by denying his motion to separate the trials for the alleged separate offenses against the two victims; and (3) he was denied effective assistance of counsel because defense counsel failed to adequately disclose that one of the victims had attention deficit disorder and failed to cross-examine both victims regarding inconsistent statement they made to police officers. On August 13, 1998, the Illinois Appellate Court affirmed the trial court's judgment. Thereafter, Newkirk filed a petition for leave to appeal ("PLA") that the Supreme Court of Illinois denied.

On June 4, 1999, Newkirk filed a pro se post-conviction petition pursuant to the Illinois Post–Conviction Hearing Act, 725 ILCS 5/122–1 *et seq*., arguing that the trial court did not consider certain sentencing factors and that he was denied effective assistance of counsel in violation of the Sixth Amendment. After reviewing Newkirk's petition, the trial court found that

2

his claims could have been raised on direct appeal and were also without merit. The trial court then summarily dismissed Newkirk's first post-conviction petition on July 13, 1999.

On January 3, 2000, Newkirk filed a second pro se post-conviction petition challenging the constitutionality of the sentencing statute. After reviewing Newkirk's second post-conviction petition, the exhibits, the common law record, and transcripts, the trial court dismissed the petition as frivolous and patently without merit on March 20, 2000.

On August 24, 2010, Newkirk filed a motion for leave to file a successive petition for post-conviction relief. After the trial court granted leave, Newkirk filed his successive petition for post-conviction relief arguing that there was newly discovered evidence of his actual innocence due to the recantation testimony of Rashon and Jeremiah. Specifically, Newkirk asserted that Rashon and Jeremiah testified falsely at his 1995 criminal trial due to coercion, intimidation, and false promises made by police officers.

At the post-conviction hearing, Rashon testified as follows: In January 1995, his adoptive mother had died a few years earlier and he and his brother, Jeremiah, had been living with their adoptive brother, Newkirk. During the evening of January 7, 1995, Rashon heard "rumbling and tussling" noises coming from Newkirk's bedroom. Newkirk's door was closed and he was screaming, which frightened Rashon. Rashon then went back to his bedroom where he and Jeremiah huddled together. In the morning, they discovered that Newkirk had been beaten and tied. Thereafter, Rashon and Jeremiah went across the street and told their neighbor what had happened, after which the neighbor called the police. The police arrived, took the boys to McDonald's to eat, and then to the police station where Rashon was placed in a different room from Jeremiah.

Rashon further testified at the post-conviction hearing that the police detective asked him whether Newkirk had ever touched him and Rashon answered no. The detective asked Rashon if he wanted to go home, after which the detective told Rashon that the police wanted to put Newkirk away because he was a bad guy. According to Rashon, police officers then placed the brothers in the same room after which Rashon told Jeremiah to "just go along with the story" so they could go home. Jeremiah testified at the post-conviction hearing that Rashon asked him to lie so they could go home and not be separated.

The police detective who talked to Rashon and Jeremiah at the time of the incident also testified at the post-conviction hearing, as well as another police officer who interviewed the brothers after they gave their statement. According to this testimony, the brothers had told the officers that Newkirk had sexually touched them. Also, the Lake County Assistant State's Attorney at the time of Newkirk's investigation and prosecution testified at the post-conviction hearing. The state's attorney testified that the boys' testimony at trial was consistent with the statements they gave to the police.

Following the post-conviction evidentiary hearing, the trial court denied Newkirk's request for relief based on his actual innocence claim due to the unreliability of the recantation evidence. Further, the trial court found that the brothers' post-conviction hearing testimony was incredible. On appeal, the Illinois Appellate Court affirmed concluding "for newly discovered evidence, in the form of new testimony, to be so conclusive that it would probably change the result at trial, it must be credible." *Newkirk,* 2012 WL 6969663, at *8.

## II. Habeas Petition

In his habeas petition, Newkirk brings two claims: (1) he is incarcerated in violation of the Eighth Amendment because he is actually innocent; and (2) he is incarcerated in violation of his Fifth and Fourteenth Amendment due process rights because he is actually innocent.

### LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the Court cannot grant habeas relief unless the state court's decision was contrary to, or an unreasonable application of federal law clearly established by the Supreme Court. *See Williams v. Taylor,* 529 U.S. 362, 402-03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Warren v. Baenen,* 712 F.3d 1090, 1096 (7th Cir. 2013). In *Williams*, the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *See id.* at 405; *see also Kamlager v. Pollard,* 715 F.3d 1010, 1015 (7th Cir. 2013) ("A state court decision is 'contrary to' federal law if it applies the wrong legal standard established by Supreme Court precedent or decides a case differently than the Supreme Court on materially indistinguishable facts.").

### ANALYSIS

Newkirk's habeas claims that his conviction and sentence violate substantive due process and the Eighth Amendment based on his actual innocence are not cognizable on federal habeas review. To clarify, the Supreme Court has concluded that "'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have

5

his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins,* 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). Indeed, "[f]or claims based on newly discovered evidence to state a ground for federal habeas relief, they must relate to a constitutional violation independent of any claim of innocence." *Johnson v. Bett,* 349 F.3d 1030, 1038 (7th Cir. 2003). In contrast, unlike claims on federal habeas review, Illinois courts recognize actual innocence claims as free standing claims based on the Illinois Constitution. *See People v. Washington,* 171 Ill.2d 475, 489, 216 Ill.Dec. 773, 665 N.E.2d 1330 (Ill. 1996).

As discussed above, federal courts cannot grant habeas relief under Section 2254(d)(1) unless the state court's decision was contrary to, or an unreasonable application of federal law clearly established by the Supreme Court. *See Williams,* 529 U.S. at 402-03. To date, there is no clearly established Supreme Court precedent that prisoners are entitled to habeas relief based on a stand-alone or freestanding claims of actual innocence. *See McQuiggin v. Perkins,* ___ U.S. ___, 133 S.Ct. 1924, 1931, 185 L.Ed.2d 1019 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."). Simply put, "[u]ntil the Supreme Court has made a right *concrete*, it has not been 'clearly established.'" *Bland v. Hardy,* 672 F.3d 445, 448 (7th Cir. 2012) (emphasis in original).

Nevertheless, Newkirk argues that his claim of newly discovered evidence relates to violations of the Eighth Amendment's prohibition against cruel and unusual punishment and the Fifth and Fourteenth Amendments' due process clauses. A habeas petition is not the appropriate vehicle to bring an Eighth Amendment claim, *see Glaus v. Anderson,* 408 F.3d 382, 387 (7th Cir. 2005), unless the habeas claim is in the context of capital punishment, which is not the case here. *See Todd v. Schomig*, 283 F.3d 842, 855 (7th Cir. 2002). Last, Newkirk's substantive due

6

process claim is based on Justice Blackmun's dissent in *Herrera* and is completely intertwined with his actual innocence claim. More specifically, Newkirk argues that imprisonment of an innocent person "shocks the conscience" and "interferes with the rights implicit in the concept of ordered liberty." Again, until the Supreme Court unequivocally decides that actual innocence claims are freestanding constitutional claims, any such claim is not cognizable on habeas review.

## CERTIFICATE OF APPEALABILITY

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Newkirk a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in the present order. *See Gonzalez v. Thaler,* ___ U.S. ___, 132 S.Ct. 641, 649 n.5, 181 L.Ed.2d 619 (2012).

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, instead, he must first request a certificate of appealability. *See Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003); *Bolton,* 730 F.3d at 697. A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See Miller-El,* 537 U.S. at 336; *Thomas v. Zatecky,* 712 F.3d 1004, 1006 (7th Cir. 2013); 28 U.S.C. § 2253(c)(2). Under this standard, Newkirk must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)).

Here, jurists of reason would not debate the Court's conclusion that Newkirk's claims based on his actual innocence are not cognizable on federal habeas review. Therefore, the Court declines to certify any issues for appeal. *See* 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For these reasons, the Court grants Respondent's motion to dismiss, denies Petitioner's petition for a writ of habeas corpus, and declines to certify any issues for appeal. *See* 28 U.S.C. §§ 2253(c)(2), 2254(d).

**Dated:** May 20, 2014

**ENTERED**

**AMY J. ST. EVE**
**United States District Judge**